UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSE L. MELENDEZ,

                                     Plaintiff,            Case # 17-CV-299-FPG

v.                                                                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                     Defendant.
_____

## INTRODUCTION

On March 21, 2013, Plaintiff Jose L. Melendez protectively applied for Disability Insurance Benefits under Title II of the Social Security Act ("the Act") and Supplemental Security Income under Title XVI of the Act, alleging disability since February 21, 2013. Tr.[1] 180-92. After the Social Security Administration ("SSA") denied his claim, Plaintiff appeared at a hearing before Administrative Law Judge Bruce Mazzarella ("the ALJ"). Tr. 48-86. On September 3, 2015, the ALJ issued an unfavorable decision. Tr. 29-40. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff appealed to this Court.[2] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). EFC Nos. 14, 18. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 10.

[2] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

**LEGAL STANDARD**

**I.    District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g) and § 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.   Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in gainful activity since the alleged onset date. Tr. 31. At step two, the ALJ found that Plaintiff had several severe impairments, including left upper extremity pain and limitation; limitation of motion in the right shoulder following surgery; residual numbness involving the left fourth and fifth fingers following left elbow surgery; diabetes with diabetic retinopathy; and sleep apnea. Tr. 31. The ALJ determined that Plaintiff's mental impairments were not severe because they caused no more than minimal limitation in Plaintiff's ability to perform basic mental work activities. Tr. 32. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 32-33.

Next, the ALJ determined that Plaintiff retains the RFC to perform sedentary work, except he is limited to lifting and carrying ten pounds frequently and twenty pounds occasionally; he can sit and stand and/or walk for an eight hour workday with only normal breaks and meals; he should not use his arms above shoulder level; he should not fully flex or extend his left dominant elbow; and he should not constantly grip with his left, dominant hand because of the finger numbness. Tr. 33.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 38. But at step five, the ALJ concluded that there were jobs in significant numbers in the national economy that Plaintiff could perform, rendering him not disabled. Tr. 38.

**II.     Analysis**

Plaintiff argues that (1) the ALJ erred in finding Plaintiff's depression and Post-Traumatic Stress Disorder ("PTSD") were non-severe impairments, (2) even if Plaintiff's mental health issues

3

were not severe, the ALJ failed to properly incorporate them into the rest of his decision, and (3) the ALJ failed to appropriately evaluate Plaintiff's credibility.[3]  ECF No. 14.  The Court disagrees.

### A. The ALJ Properly Concluded That Plaintiff's Mental Health Issues Were Non-Severe

At step two, the ALJ concluded that Plaintiff's depression and PTSD did not cause more than a minimal limitation in his ability to perform basic mental work activities, and therefore were non-severe.  Tr. 32.  This was not error.

 "[T]he threshold for establishing a severe impairment at step two is extremely low and an ALJ should only deem an impairment non-severe if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Monroe v. Berryhill*, No. 17 Civ. 3373, 2018 WL 3912255, at *22 (S.D.N.Y. July 24, 2018) (quoting other sources).  In other words, the "analysis at step two is a threshold test designed to screen out *de minimis*" or "totally groundless claims."  *Benoit v. Saul*, No. 3:19-cv-00443 (WIG), 2019 WL 6001596, at *9 (D. Conn. Nov. 14, 2019); *Cooper v. Berryhill*, No. 17-CV-6782-JWF, 2019 WL 1233686, at *2 (W.D.N.Y. Mar. 15, 2019).

Psychiatric health records from July 2013 to July 2014 endorse depression and PTSD.  *See* Tr. 698-717.  Plaintiff indicated that he had been feeling increasingly depressed since 2012 and that he sometimes experienced flashbacks and nightmares.  Tr. 698.  His health care providers started him on Zoloft, Tr. 700, and Wellbutrin, Tr. 711, which improved his depression, Tr. 711.  Plaintiff also indicated that "he was able to do better with counseling."  Tr. 702.  Nevertheless,

---

[3] Additinoally, in passing, Plaintiff's memorandum of law suggests that "although the ALJ considers how Mr. Melendez's conditions affect his ability to grip, he fails to consider how they affect his ability to finger and feel." ECF No. 14 at 9. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Accordingly, the Court does not address this "argument."

Plaintiff reported not taking his medication, Tr. 706, and he frequently failed to attend his scheduled appointments, Tr. 705, 709, 710, 716, 717.  His providers attempted to reach him but "phone attempts did not go through" and his case was ultimately closed.  Tr. 703.  Plaintiff's self-reported depression is referenced sporadically throughout the record, *see, e.g.*, Tr. 576, 580, 586, 607, 620, 671, 686, 712, 726, but no other provider elaborates on the severity of the impairments or suggests the degree to which Plaintiff's functioning would be impaired.  These sparse records, while positive for some mental health issues, do not support a conclusion that Plaintiff's mental health issues are severe.

Indeed, as the ALJ recognized, the record shows that Plaintiff's depression and PTSD would only have a minimal effect on his ability to work.  *See* Tr. 32.  In an opinion from July 31, 2013, consultative examiner Susan Santarpia, Ph.D., acknowledged Plaintiff's "[d]epressive symptomatology," Tr. 591, and "[m]ood disorder," Tr. 594, but remarked that Plaintiff reported being able to dress, bathe, and groom himself, manage his own money, socialize, and engage in hobbies and that his attention, concentration, and memory were intact.  Tr. 593.  Dr. Santarpia opined that Plaintiff's mental health problems resulted in no more than "[m]ild impairment" in performing complex tasks independently.  Tr. 593.  Dr. Santarpia also noted that the difficulties Plaintiff experienced were "caused by lack of motivation."  Tr. 593.  According to Dr. Santapria, Plaintiff had no limitations in ability to understand simple directions, perform simple tasks independently, maintain concentration, learn new tasks, make appropriate decisions, relate adequately with others, and adequately deal with stress.  Tr. 593.  Because the record establishes that Plaintiff's depression and PTSD would only have a minimal effect on his ability to function, the ALJ did not err in concluding that these impairments were non-severe.

### B. The ALJ Considered Plaintiff's Mental Health Impairments Throughout the Decision

Even if the ALJ did err in finding Plaintiff's depression and PTSD non-severe at step two, any error was harmless. Courts in this Circuit employ a specialized harmless error analysis with respect to severity errors at step two:

> "[W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." *Snyder*, 2014 WL 3107962 at *5.

*Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *3 (W.D.N.Y. Aug. 7, 2018), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019). An ALJ is required to "consider the combined effect of all of [Plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. Moreover, it is at least plausible that non-severe psychological impairments could impact plaintiff's ability to work, especially when coupled with the physical limitations the ALJ did find severe. *Graham v. Berryhill*, No. 16-cv-6787-FPG, 2017 WL 5019274, at *3 (W.D.N.Y. Nov. 2, 2017).

Plaintiff argues that any error was not harmless because the ALJ failed to consider the effect of Plaintiff's severe and non-severe impairments as evidenced by the lack of any mental limitations in the RFC. But that is not the standard. The ALJ need only consider the non-severe impairments throughout the subsequent steps, taking into account the combined effect of these

non-severe impairments on Plaintiff's functioning. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) ("Because these conditions were considered during the subsequent steps, any error was harmless."); *see Taylor v. Astrue*, 32 F. Supp. 3d 253, 267–68 (N.D.N.Y. 2012) (finding no error where ALJ found that non-severe impairments, "either individually or in combination," did not have more than a minimal effect of Plaintiff's ability to work); *Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination).

Here, even after concluding that Plaintiff's depression and PTSD were non-severe, the ALJ continued on to consider and weigh the effect of those impairments on Plaintiff's RFC. For example, in the context of deciding Plaintiff's RFC, the ALJ detailed Plaintiff's allegations regarding his mental functioning, Tr. 34, his activities of daily living, Tr. 34, the mental health records from 2013 and 2014, Tr. 36, and the mental health opinions from Dr. Santarpia and J. Eschevarria, M.D., the review psychiatrist, Tr. 37. Based on that evidence, and with respect to Plaintiff's depression and PTSD, the ALJ again concluded that "[t]he record fails to establish the presence of any significant limitations associated with such a condition." Tr. 35.

The ALJ did not include any limitations arising from Plaintiff's mental health impairments not because he did not consider them, but because no such limitations were supported by substantial evidence. As explained above, while the record establishes that Plaintiff has *some* mental health issues, there is no evidence in the record that Plaintiff would be more than minimally limited as a result of them. That the ALJ did not include any limitations associated with Plaintiff's

mental health is a function of the scant record supporting any such limitations, not evidence that the ALJ disregarded the mental health impairments altogether.

### C. The ALJ Properly Assessed Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ's decision selectively, and therefore improperly, evaluated Plaintiff's credibility. ECF No. 14 at 10. Again, the Court disagrees.

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citation omitted). However, the ALJ's credibility findings "must be set forth with sufficient specificity to permit intelligible plenary review of the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 403 (W.D.N.Y. 2014) (quotation marks and citation omitted); *see also* S.S.R. 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996)[4] (The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight."). "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Jackson*, 2009 WL 3764221, at *7 (quotation marks and citation omitted). "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Id.* (citation omitted).

The ALJ must consider all of the Plaintiff's statements about his symptoms and how those symptoms affect his daily activities and ability to work. 20 C.F.R. §§ 404.1529, 416.929 (effective

---

[4] This rule was superseded by S.S.R. 16-3p on March 16, 2016. But S.S.R. 96-7p still applies to ALJ decisions, like this one, issued before March 2017.

June 13, 2011 to Mar. 26, 2017). However, the claimant's statements alone will not establish disability. *Id.* Thus, the ALJ must follow a two-step process when considering the claimant's alleged symptoms and their effect on her ability to work. The ALJ must first consider whether the medical evidence shows any impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at §§ 404.1529(a), 416.929(a). If such an impairment is shown, the ALJ must evaluate the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit her work capacity. *Id.* at §§ 404.1529(c)(1), 416.929(c)(1).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. *Id.* at §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ concluded that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's "statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible." Tr. 34. The ALJ explained that Plaintiff's subjective complaints were not entirely consistent with the record as a whole. As explained above, that is true. Plaintiff's mental health complaints are not supported by the record and Plaintiff does not seem to argue that the ALJ's conclusions regarding Plaintiff's physical limitations are unsupported by the record. The ALJ noted that Plaintiff had a history of work, "good earnings," and an attempt to obtain his GED, which raised "a favorable inference of an

individual with motivation to work within his capabilities." Tr. 34. However, the ALJ determined that Plaintiff "is not involved with vocational rehabilitation nor has he looked for any other, less demanding work even on a part-time basis." Tr. 34.

Plaintiff objects to this rationale because Plaintiff returned to work after several surgeries between 2010 and 2012. *See* ECF No. 14 at 10-11. While that may be true, the ALJ's statement regarding Plaintiff's failure to seek other work is also correct. Nothing in the record supports a conclusion that Plaintiff sought vocational rehabilitation or part-time work. *Kirk v. Colvin*, No. 12-CV-6075-FPG, 2014 WL 2214138, at *11 (W.D.N.Y. May 28, 2014) (finding that "it was entirely proper for the ALJ to consider Plaintiff's motivation, or lack thereof, to return to work when assessing Plaintiff's credibility"); *Bradley v. Astrue*, No. 12-CV-6205, 2014 WL 2520690, at *9 (W.D.N.Y. Mar. 28, 2014) (finding no error in credibility analysis where plaintiff "has never tried vocational rehabilitation"). The ALJ is afforded the discretion to balance these competing facts and arrive at a conclusion. *Jackson*, 2009 WL 3764221, at *7. The ALJ did so here by acknowledging that there are some facts in the record supporting an inference that Plaintiff is motivated to work, but ultimately concluding that other facts support the opposite.

The ALJ further supported his credibility determination by addressing the factors outlined above. For example, the ALJ remarked that Plaintiff needs help bathing but can engage in a wide variety of other daily activities, such as helping around the house, cooking, doing dishes and laundry, shopping, collecting Star Trek models, and attending church. Tr. 34. The ALJ also addressed Plaintiff's self-reported symptoms, Tr. 34, his medications, Tr. 36, and his mental and physical health treatments and occasional non-compliance with those treatments, Tr. 36 (noting Plaintiff's discontinuation of mental health treatment and admission that he does not always take his insulin). The ALJ also gave great weight to Dr. Santarpia's consultative opinion that, among

other things, Plaintiff's "[d]ifficulties were caused by lack of motivation." Tr. 43. To be sure, the ALJ credited many of Plaintiff's allegations regarding his physical impairments, but did not credit those portions of Plaintiff's allegations regarding his mental impairments that, as discussed above, were not supported by the record. Taken together, the Court finds that the ALJ's rationale for his credibility determination was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 14, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 18, is GRANTED, and the complaint is DISMISSED WITH PREJUDICE. The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 24, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court